## THOMAS *v.* JOHNSTON.

### Opinion delivered April 30, 1906.

1. CONTRACT—CONSTRUCTION—PROVINCE OF THE COURT.—It is the province of the court to construe contracts. (Page 577.)

2. WRITTEN CONTRACT—PAROL EVIDENCE TO VARY.—Where parties have reduced their contract to writing and signed it, oral evidence is inadmissible to show that they intended to make a different contract. (Page 577.)

3. LANDLORD AND TENANT—VALIDITY OF CONTRACT.—A landowner may agree with another that the relation of landlord and tenant shall subsist between them until it shall be changed into the relation of vendor and vendee by payment in full of certain amounts named. (Page 579.)

Appeal from Columbia Circuit Court; *Charles W. Smith,* Judge; reversed.

*Stevens & Stevens,* for appellant.

1. Foster was in possession under a lease, and not as a purchaser, and the first three instructions should not have been given. The first two because all the evidence shows Foster a tenant. The contract is a lease in form; there is no ambiguity in it, and parol evidence was not admissible to show a purchase. 40 Ark. 237; 3 L. R. A. 308; 5 *Id.* 672; 15 *Id.* 543; 29 *Id.* 544; 45 *Id.* 177. The rule applies to Boyd, a party to the lease. 22 L. R. A. 391; 31 Ark. 411; 45 *Id.* 449; 7 U. S. (Law Ed.), 761; 22 *Id.* 783.

2. The court should have ruled on the question whether it was a lease or sale, and not have left it to the jury. 20 Ark. 583; 1 Elliott on Ev. § 30; 66 Ark. 445; Thompson on Trials, § § 1067-8. See also 54 Ark. 16; 69 Ark. 306.

*Smead & Powell* and *C. W. McKay,* for appellees.

1. The written contract is conclusive that the parties intended a sale. 54 Ark. 16; 39 *Id.* 560; 51 *Id.* 218. The case of *Ish* v. *Morgan,* 48 Ark. 413, is unlike this.

2. Boyd and Johnston were strangers to the contract, and it was competent to introduce parol testimony to explain, vary or contradict its terms. 45 Ark. 447; Greenl. Ev. § 189; 11 Am. & Eng. Enc. Law (2 Ed.), 394; 52 Ark. 93.

3. Appellees not being privies to the contract, the construction of same was a question for the jury to consider, with other evidence in the case. 35 Ark. 156.

McCULLOCH, J. This is an action of replevin for two bales of cotton, the plaintiffs claiming title to the property under a crop mortgage executed by Bob Foster, one of the defendants, and defendant, Thomas, claiming a lien on the cotton as landlord of Foster. Thomas owned the land, and placed Foster in possession under a written contract. Foster mortgaged the crop on the land to plaintiffs. The contract is as follows:

"Articles of rent contract made and entered into by and between J. A. Thomas, party of the first part, and Bob Foster, party of the second part.

"I, J. A. Thomas, party of the first part, do agree for my part to rent the second party, Bob Foster, the following-described land, towit:

"The west half of northeast $\frac{1}{4}$ and (10) ten acres in the S. E. corner of the southeast $\frac{1}{4}$ of northwest $\frac{1}{4}$, all of sec. (26) twenty-six, township (17) seventeen, range (21) twenty-one, ninety acres more or less, for his three notes as follows: One note for $150 due October the 1st, 1901, rent for the place described above for the year 1901; one note for $150, due October the 1st, 1902, rent for the place for the year 1902; one note for $150, due October the 1st, 1903, rent for the place for the year 1903. These three notes draw interest from December 20, 1900, at ten per cent. until paid. Now, I further agree, in addition hereto, that if the second party, Bob Foster, promptly pays these notes with all interest as they become due, and any other amount due me by note or account that we may make by our own wish or will, when this amount or amounts are fully paid as they become due, then and for these amounts I bind myself and heirs to make the second party a deed to the land described; but if a failure upon the part of the second party to make any one of these payments at maturity, time being the essence of this contract, if a failure is made, the first party shall have the right to declare this contract null and void, after notifying the second party that the amount due is unpaid; and if the second party fails to make satisfactory arrangements at once, then the first party can null and void this entire contract, or by written instrument carry any amount agreed upon, and it stated in the writing drawn up. Should failure upon the second party be made, no remuneration or pay for any kind of work or labor done during this term of contract and so clearly agreed. The second party takes the place as it stands, and does such improvements as he may choose at his own expense and cost. The second party will counsel and be principally governed by my directions in the cultivation of the crop. I am acknowledged to be the true landlord in all these transactions under any and all circumstances, if necessary to take any steps in carrying out justice as a landlord.

The second party is now on said place, and if he remains on said place, and works said land continuously, all will be favorable; but if at any time the second party vacates or fails to work said land in a good farm-like manner, should he do either of the above, just so soon as this is done, this contract is null and void. A failure upon the part of the party of the second part is then made and so agreed; but if the second party, Bob Foster, manages his business successfully, and pays these amounts as they become due, which I think he can and will do, and when they are paid; I will promptly make this deed as set forth in the above.

"I, Bob Foster, party of the second part, do, after helping to bring about this contract and fully understanding every proposition or stipulation in the above, this day execute my three notes for the amount named above, and in doing this I do so in good faith, feeling determined to pay this·amount of rent yearly and secure me a home, and I shall do·every thing in my power to pay each note or any other amount when due, and, if I fail, I will do all I can to give satisfaction, and, should I fail, I cheerfully accept the purport of the contract without any opposition or redress, and when I pay this amount to the first party, which I expect to do, I shall demand a deed.

"In earnest undertaking, we sign this to carry out this contract. If any timber can be sold of any kind and in any way, the money or proceeds must go to the credit of these notes, so agreed and clearly understood."

Notes were executed pursuant to the terms of the contract, which recited that they were given for rent of the land described.

The defendant asked the court to construe the contract to be a lease, and not a sale, and to so instruct the jury, which the court refused to do. The court also permitted the plaintiffs to introduce oral testimony tending to show that the parties intended the contract to be a sale of the land.

The court should have construed the contract and instructed the jury as to its meaning. It was error to admit oral evidence .as to the. intention of the parties. *Smith* v. *Caldwell, ante,* p. 333; *Carpenter* v. *Thornburn,* 76 Ark. 578; *Colonial & U. S. Mortg. Co.* v. *Jeter,* 71 Ark. 185.

It is contended that an inspection of the whole contract reveals the fact that the real intention of the parties was to make a

sale of the land, though that intention was disguised in the garb of a rent contract. In other words, that the parties really intended a sale, and that the court should construe it as a contract for sale, and not for lease. The intention of the parties must, however, be gathered from the language of the contract, and it is manifest that, while they intended that the contract should eventually result in a sale of the premises, yet they elected to make it a contract for lease, and to create the relation of landlord and tenant, and to stipulate that that relation should continue to subsist between the parties until it should be changed into the relation of vendor and vendee by payment in full of the amounts named. They had a right to make such a contract. There is nothing unlawful about it. In *Quertermous* v. *Hatfield,* 54 Ark. 16, Chief Justice COCKRILL, speaking for the court, said: "If the parol agreement between the appellant, who was the plaintiff below, and the appellee's intestate was for the sale and purchase of the land, upon the condition that, on default in payment of the first installment of purchase money, the contract of purchase should end *ipso facto,* and the relation of landlord and tenant should subsist as though no sale had been contemplated, then plaintiff was entitled to judgment for the rent agreed upon and to the enforcement of his landlord's lien upon the crop. *Ish* v. *Morgan,* 48 Ark. 213; *Watson* v. *Pugh,* 51 Ark. 218; *Cheney* v. *Libbey,* 134 U. S. 68. Or, if the agreement was in effect a lease of the land with an option to the lessee to purchase and treat the rent money as the first installment of the purchase price, dependent upon the prompt payment of the amount when due, the failure to pay at the time fixed by the parties terminated the right to purchase, the relation of landlord and tenant remained, and the plaintiff was entitled to his recovery. But if the agreement contemplated an absolute sale, the fact that the first installment of purchase money was called rent by the parties would not import into the contract a condition such as that first mentioned above, and thereby change the relation of vendor and vendee into that of landlord and tenant. Calling the purchase money rent would not make it such, nor create a lien on the crops for its payment."

The rule is, we think, correctly stated in 18 Am. & Eng. Enc. Law, pp. 168, 169, and the same is abundantly sustained by the

numerous authorities there cited. It is stated thus: "The parties to an agreement for the sale of land may also contract with the right, at the election of either party in the future, upon the performance or nonperformance of certain conditions, to treat the transaction either as a purchase-and-sale contract, or a lease; and if the election is made to treat it as a tenancy, it relates to the time of making the contract, and the relation of landlord and tenant, with all the incidents and liabilities, will be regarded as having begun at that time. So, also, a lease may give to the lessee an option to become a purchaser without preventing the creation of the relation of landlord and tenant prior to the proper exercise of such option, though the payments made as rent are to be credited upon the purchase price in case of the exercise of such option. Where it is stipulated in the contract of sale that the tenant shall pay rent during his occupation, and until the conveyance is made, the relation of landlord and tenant is created."

Now, it is plain that the parties to this contract intended to create the relation of landlord and tenant, and to continue that relation until both of the stipulated payments should be made, and time was declared to be of the essence of the contract. They executed a rent contract with an option to purchase, the relation of vendor and vendee to arise when the last payment should be made.

The case of *Carpenter* v. *Thornburn, supra,* is similar to this, except that the contract in that case provided for further payments after the exercise of the option to purchase. There is, however, no difference in principle between a contract with an option to purchase after certain number of rent payments have been made, and one with an option to become a purchaser after rent in sufficient amount has been paid to make up the agreed purchase price. In either event it falls within the power of the parties to contract, and there is nothing in the law to prevent them from making such a contract. There is nothing to prevent them from stipulating when the relation of landlord and tenant shall end and the relation of vendor and vendee shall arise.

The facts in *Blanchard* v. *Raines,* 20 Fla. 467, were almost identical with the facts of the case at bar. There two rent notes had been executed for successive years, containing a stipulation that if both notes should be paid promptly the landlords should

convey the land to the tenant. The court said: "It does not change the character of the agreement to pay rent that the tenant may at the end of the time claim a conveyance of the land, having made prompt payment of the notes as per contract."

The case of *Houston* v. *Smythe,* 66 Miss. 118, is also very similar, there being a lease for two years with a stipulation that a conveyance should be made to the tenant upon payment of the last sum being made. The court, by Judge Campbell, said: "It was admissible for the parties to create the relation of landlord and tenant as they did. The purpose of it is obvious, and, after expressly creating this relation for purposes of their own, it is not allowable afterwards to recede from it or complain of its legal consequences."

The court erred in refusing to declare the contract to be a lease and to instruct the jury as asked by defendants.

Reversed and remanded for a new trial.

BATTLE, J., dissents.